UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01764-FWS-ADS Date: October 5, 2026
Title: Hakan Kardes v. Alignment Healthcare, Inc., *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNT ONE OF PLAINTIFF'S AMENDED COMPLAINT [40] AND ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS [36]**

In this case, Plaintiff Hakan Kardes alleges that Defendants Alignment Healthcare, Inc. ("Alignment"), Alignment Healthcare USA, LLC, and several of its executives (collectively, "Defendants") wrongfully retaliated against Plaintiff after he acted as a whistleblower by reporting certain accounting irregularities. (*See generally* Dkt. 1 (Complaint).) Before the court is Defendants' Motion for Sanctions, (Dkt. 36 ("Sanctions Motion")), and Defendants' Motion to Dismiss Count One of Plaintiff's First Amended Complaint (Dkt. 40 ("Motion to Dismiss" or "MTD")). Plaintiff opposes both Motions (Dkts. 39 ("Sanctions Opp."), 42 ("MTD Opp."), and the matter is fully briefed, (Dkts. 43 ("Sanctions Reply"), 45 ("MTD Reply")). The court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the **hearing** set for **October 15, 2026**, is **VACATED** and **OFF CALENDAR**.

## I. Background

Plaintiff's First Amended Complaint ("FAC") alleges the following facts. Plaintiff joined Alignment as a Chief Data Officer on January 7, 2019, and by 2024 had become one of Alignment's senior executives, serving as Chief Transformation Officer. (Dkt. 35 ("FAC") ¶ 4.) Plaintiff worked with John Kao, Alignment's Chief Executive Officer; Dawn Maroney,

Alignment's President; Robert Scavo, Alignment's Chief Information Officer; and Andreas Wagner, Alignment's Chief Human Resources Officer. (FAC ¶¶ 18–21.) In early 2025, John Kao expressed plans to elevate Plaintiff to the position of "President or to enterprise Chief Operating Officer by mid-year 2025." (FAC ¶ 7.) Anticipating expanded responsibilities, Plaintiff "deepened his review of the Company's strategic initiatives, budgets, resource allocations, project capacity, and underlying financial assumptions." (FAC ¶ 4.) Plaintiff alleges that "Kao placed intense pressure on leaders to achieve and preserve the Company's Adjusted EBITDA profitability narrative." (FAC ¶ 34.) But during his review of Alignment's finances, Plaintiff discovered "what he reasonably believed were serious accounting irregularities." (FAC ¶ 7.) Plaintiff's concern was "that approximately $8 million to $10 million of OpEx had been misclassified as CapEx." (FAC ¶ 35.) Plaintiff alleges that "[c]orrecting the OpEx/CapEx issue would have eliminated Alignment's reported positive Adjusted EBITDA for 2024 and undermined the precise profitability narrative the Company was emphasizing to investors, employees, and the public securities markets." (FAC ¶¶ 35, 105.) Therefore, Plaintiff believed that the misclassification "reflected a falsification of the books and records underpinning the Company's financial reporting."

On March 18, 2025, Plaintiff "told Kao that the current allocations of CapEx and OpEx were wrong and needed to be changed." (FAC ¶ 105.) Shortly after Plaintiff reported the issue to Kao, the plan to promote Plaintiff was terminated and Plaintiff was stripped "of virtually all responsibility and all direct reports, including the artificial-intelligence and data-science functions" he had been in charge of. (FAC ¶ 8.) On March 29, 2025, Plaintiff "contacted Maroney about the situation and reported the CapEx/OpEx irregularities to her." (FAC ¶ 130.) "Maroney discouraged [Plaintiff] from documenting his concerns in writing." (FAC ¶ 130.) On April 1, 2025, at an "executive meeting with [Plaintiff], Kao, Maroney, and Wagner, Kao informed [Plaintiff] that he was reneging on [Plaintiff's] planned mid-year promotion to President, AVA Technologies." (FAC ¶ 132.) "Kao refused to provide any explanation for the cancellation of [Plaintiff's] promotion and simply stated that the decision reflected conversations with a 'few board members.'" (FAC ¶ 135.)

"On April 4, 2025, in discussions between Alignment's then-Chairman of the Board, Joseph Konowiecki, and [Plaintiff], Konowiecki confirmed that the Board was unaware of any performance issues concerning [Plaintiff]." (FAC ¶ 139.) "On April 4, 2025, [Plaintiff] raised the OpEx/CapEx irregularities with Scott Ropp (SVP, Finance), who reported to Alignment's

CFO." (FAC ¶ 141.) "Ropp understood the serious nature of the issue and confirmed that it was a problem requiring correction." (FAC ¶ 141.) On April 7, 2025, Kao met with Plaintiff to lay "out a new organization chart" and "was accompanied by his personal security guard" which Plaintiff perceived an as attempt "to intimidate him and, if he objected or challenged any decision, to escort him out." (FAC ¶ 146.)

On April 9, 2025, Kao and Maroney met with Plaintiff and Kao told Plaintiff his two options were to "remain working under the revised structure," or "leave the Company." (FAC ¶ 160.) That night, Plaintiff sent an email to Alignment executives which expressed "his intent to resign under pressure." (FAC ¶ 162.) However, Plaintiff's "status at the company remained in flux after April 9, 2025" as Alignment "proposed alternative roles" under which Plaintiff could remain employed. (FAC ¶ 167.) On April 14, 2025, an "internal announcement of [Plaintiff's] departure from Alignment" was circulated. (FAC ¶ 181.) Then on April 15, 2025, Alignment filed a Form 8-K with the Securities and Exchange Commission (SEC), which publicly announced Plaintiff's resignation. (FAC ¶ 9.) Plaintiff remained employed at Alignment until his last day on May 16, 2025. (*Id.*)

On October 14, 2025, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA") under Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX") 18 U.S.C. § 1514A. (FAC ¶ 13.) OSHA proceeded to investigate Plaintiff's complaint. (Sanctions Opp. at 7.) During the investigation, sworn declarations and documents were produced. (*Id.*) Alignment argued that the OSHA complaint was untimely. (*Id.*) After 180 days of investigation passed without a final agency decision, Plaintiff filed his Complaint in federal court on July 7, 2026, bringing claims for whistleblower retaliation, wrongful discharge, unpaid wages, and breach of his employment agreement. (Dkt. 1 ("Complaint").) After Defendants moved to compel arbitration and dismiss Plaintiff's claims, Plaintiff filed his FAC on September 3, 2026, alleging the same claims but expanding the specific allegations. (*See generally* FAC.) On September 9, 2026, Defendants filed their Motion for Sanctions and on September 17, 2026, Defendants filed their Motion to Dismiss Count I of Plaintiff's FAC. (Dkts. 36, 40.)

## II. Judicial Notice

Defendants request the court to take judicial notice of Plaintiff's April 9, 2025, email expressing his intent to resign, the April 11, 2021, Employment Agreement between Plaintiff and Alignment, and Plaintiff's October 14, 2025, OSHA Complaint. (Dkt. 40-2.)

Generally, if a court considers evidence outside the contents of the complaint when deciding a Rule12(b)(6) motion to dismiss, it is converted into a motion for summary judgment under Fed. R. Civ. P. Rule 56. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); Fed. R. Civ. P. 12(d). There are, however, three exceptions to this rule that do not demand converting the motion to dismiss into one for summary judgment. *Lee*, 250 F.3d at 688. First, pursuant to Federal Rule of Evidence 201, the court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) (citing *Lee*, 250 F.3d at 689); *see* Fed. R. Evid. 201(b). Second, the court also may take judicial notice of documents attached to or "properly submitted as part of the complaint." *Lee* , 250 F.3d at 688. Third, if the documents are "not physically attached to the complaint," they may still be considered if the documents' "authenticity . . . is not contested" and the documents are necessarily relied upon by the complaint. *Id.*; *United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and cannot be incorporated by reference. *Khoja*, 899 F.3d at 1002.

Here, the requested materials are explicitly relied upon by the FAC. (FAC ¶¶ 8, 17, 236–237.) Plaintiff does not oppose the court taking judicial notice of these materials. (MTD Opp. at 14–15.) Accordingly, the court grants Defendants' request to take judicial notice of the April 11, 2025, email, Plaintiff's Employment Agreement, and Plaintiff's OSHA Complaint.

## III. Defendants' Motion to Dismiss

Defendants argue that Count I of Plaintiff's FAC, which alleges that Defendants violated Section 806 of SOX, should be dismissed because it is procedurally barred and fails to adequately state a claim upon which relief can be granted. (MTD at 2.)

### A. Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (stating that, in ruling on a Rule 12(b)(6) motion, the court may consider attached exhibits). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996

(quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Eclectic Props. E., LLC*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss made pursuant to Rule 12(b)(6):

> Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

### B. Discussion

Defendant argues that Count I of Plaintiff's FAC, which alleges that Defendants violated Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), should be dismissed because

(1) Plaintiff's SOX claim is time barred; (2) Plaintiff failed to exhaust administrative remedies as to Defendants Scavo, Maroney, and Wagner; (3) the claim fails on the merits because Plaintiff "does not plausibly allege that he engaged in protected activity;" and (4) Plaintiff fails to "sufficiently allege individual liability" as to Defendants Scavo, Maroney, and Wagner. (MTD at 2.) The court addresses each of these arguments.

### 1. Statute of Limitations

Under the Sarbanes-Oxley Act, an aggrieved whistleblower can initiate an administrative action by filing a complaint with the Secretary of Labor, which must be filed "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." § 1514A(b)(1)(A), (2)(D). The violation occurs "when the discriminatory decision has been both made and communicated to the complainant." 29 C.F.R. § 1980.103(d). A SOX claim accrues and the "statute of limitations be[gins] to run, when [the employee] learned of the actual injury, *i.e.*, that [the employer] had decided to terminate [their] employment." *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010); *Smith v. Coupang, Inc.*, 772 F. Supp. 3d 1228, 1238 (W.D. Wash. 2025). "Where the adverse employment action was 'initially unclear' a court may consider the final date of work where the decision was 'unquestionably communicated' to the employee." *Smith*, 772 F. Supp. 3d at 1238 (quoting *Coppinger-Martin*, 627 F.3d at 749).

Plaintiff filed his OSHA complaint on October 14, 2025. (FAC ¶ 13.) Defendants argue that the filing was untimely because it came 188 days after Plaintiff's April 9, 2025, email indicating his intent to resign. (MTD at 8.) Plaintiff responds that dismissal on this basis is improper because the operative date kicking off the 180-day clock is disputed by the parties. (MTD Opp. 1–2.) Specifically, Plaintiff argues that the April 9 email "expressly left any earlier transition and its timing to further discussion with" Alignment executives and that the April 14 and 15, 2025 company-wide announcements of Plaintiff's departure are what started the 180-day clock. (*Id.*)

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citation and internal quotation marks omitted). At this time, the court does not

find it sufficiently apparent from the pleadings that Plaintiff's SOX claim is barred by the statute of limitations. While the Supreme Court in *Green v. Brennan*, 578 U.S. 547, 564 (2016) held that the statute of limitations on a constructive discharge claim accrues when the employee "gives notice of his resignation, not on the effective date of that resignation," it remanded the case to the Tenth Circuit "to determine when th[at] in fact occurred." On remand, the defendants argued that the employee gave notice of resignation on the date he signed a settlement agreement and the employee argued that he did not effectively give notice until he submitted his retirement paperwork months later. *Green v. Brennan*, 669 F. App'x 951, 952 (10th Cir. 2016). The Court ultimately found that the employee "did not give [] notice until submitting retirement paperwork" and that the claim was thus timely. *Id.*

Here, the materials before the court do not clearly or adequately demonstrate that Plaintiff's SOX claim is time-barred. The day after Plaintiff sent the April 9 email, Alignment "proposed alternative roles under which [Plaintiff] would remain employed" and told Plaintiff that the terms of his employment or exit were "still under discussion." (FAC ¶¶ 167–172.) Without expressing an opinion on the merits of any claim or defense, the court is unpersuaded by the arguments and record before it at this stage of the proceedings that Plaintiff's SOX claim is time-barred (or is not) on the face of the FAC.

**2. Exhaustion of Administrative Remedies**

The Sarbanes-Oxley Act "require[s] that a whistleblower exhaust any administrative remedies before bringing an action in federal district court." *Wadler v. Bio-Rad Lab'ys, Inc.*, 141 F. Supp. 3d 1005, 1015 (N.D. Cal. 2015). Defendants argue that Plaintiff failed to exhaust administrative remedies against Scavo, Wagner, and Maroney because "Scavo and Wagner were not named as respondents in the OSHA Complaint" and "the OSHA Complaint contains no allegations that [Maroney] contributed to the purported retaliation." (MTD at 14–15.)

"Because of the absence of formal pleading requirements, complaints in OSHA administrative proceedings are not expected to meet the standards of pleading that apply to claims filed in federal court under Rule 12(b)(6). Additionally, administrative pleadings are liberally construed and easily amended." *Donovan v. Royal Logging Co.*, 645 F.2d 822, 826 (9th Cir. 1981) (internal quotations omitted). Thus, "a complaint is sufficient so long as the whistleblower complainants give an opposing party 'fair notice' of the charges against it."

*Luong v. Super Micro Computer, Inc.*, 2025 WL 1696819, at *9 (N.D. Cal. June 17, 2025) (quoting *Wadler*, 141 F. Supp. 3d at 1020).

The court finds that while Plaintiff's OSHA Complaint gave "fair notice" to Maroney and Wagner of potential claims against them, it did not give Scavo fair notice of any potential claims.

First, the OSHA Complaint specifically names Maroney as a respondent. (Dkt. 40-2 ("OSHA Complaint") at 37.) It further alleges that "Respondents Kao and Maroney…engaged in a campaign to intimidate and punish [Plaintiff] and retract/rescind the promotions they had only just given him." (*Id.*) Thus, the court is not persuaded by Defendants' argument that the OSHA Complaint "contains no allegations that [Maroney] contributed to the purported retaliation." (MTD at 15.) The court finds that because the OSHA Complaint specifically names Maroney as a respondent and contains allegations of retaliatory conduct, it gave Maroney fair notice of potential claims.

Second, the court finds that the OSHA Complaint cites specific conduct on the part of Wagner as the head of Alignment's HR that put him on notice that he was being accused of retaliatory conduct. The OSHA Complaint alleges that Alignment's "head of HR" (Wagner) told Plaintiff "that he would have no promotion" and upon hearing Plaintiff's concerns responded, "then what are you going to do [about it]?" (OSHA Complaint at 8.) The court finds that the inclusion of specific conduct on the part of Wagner provided fair notice that there were potential retaliation claims against him. The fact that Wagner was not specifically named as a respondent in the OSHA Complaint is not fatal. *See Botta v. Pricewaterhouse Coopers LLC*, 2018 WL 11360442, at *3 (N.D. Cal. Oct. 9, 2018) ("Fair notice [is] established not only by formally naming individual defendants in the heading or caption, but by identifying specific conduct by the individuals accused of retaliation or that resulted in plaintiff's termination."); *Wadler*, 141 F. Supp. 3d at 1021 ("To require that an individual defendant be named in the caption of an administrative complaint when no formal pleading (or even written document) is even required under Sarbanes-Oxley is inconsistent with the statutory and regulatory framework established by Congress and the Department of Labor to ensure compliance with Sarbanes-Oxley.").

However, the court finds that the OSHA Complaint did not provide Scavo fair notice of potential retaliation claims against him. The OSHA Complaint does not specifically name Scavo and does not include any citation to specific conduct on the part of Scavo that would have put him on notice of any potential claims. The only reference to Scavo in the OSHA Complaint is in a single sentence that states that Plaintiff was told all data science responsibilities "would be moved to another individual"—Scavo—after he reported accounting irregularities. (OSHA Complaint at 7.) This alone is not enough, even under the liberal standard that applies to administrative complaints, to give Scavo fair notice of any potential retaliation claims against him. *See Wadler*, 141 F. Supp. at 1021 (finding a lack of fair notice where plaintiff did "not cite any specific conduct on the part of [certain] individuals that would have put them on notice that [plaintiff] was accusing them of retaliatory conduct"). Accordingly, because the court finds that Plaintiff did not give Scavo fair notice in his OSHA Complaint, his SOX claim against Scavo is barred for failure to exhaust administrative remedies.

### 3. Plausibility of Plaintiff's Allegations

In order to state a claim for retaliation under SOX, a plaintiff must plausibly allege the following: (a) "[t]he employee engaged in a protected activity or conduct"; (b) "[t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity"; (c) "[t]he employee suffered an unfavorable personnel action"; and (d) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (quoting 29 C.F.R. § 1980.104(b)(1)(i)-(iv)). Defendants only challenge the first element—whether Plaintiff plausibly alleged that he engaged in protected activity.

To allege protected activity, "an employee 'need only show that he or she reasonably believe[d]' that the conduct complained of is a violation of the laws enumerated in 18 U.S.C. § 1514A." *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017) (cleaned up). An employee must show that their belief was both subjectively and objectively reasonable. *Id.* "That is to say, a plaintiff 'must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation.'" *Id.* (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 220–21 (2d Cir. 2014)). However, a plaintiff "need not prove a violation of the substantive

laws" and "can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation." *Id.* (quoting *Sylvester v. Parexel Int'l LLC*, 2011 WL 2517148, at *20 (U.S. Dept. of Labor May 25, 2011)).

The court finds that Plaintiff has plausibly alleged that he engaged in protected activity. Plaintiff alleges that he reported to Alignment "information regarding conduct that he reasonably believed constituted violations of SEC rules and regulations and of federal law relating to fraud against shareholders." (FAC ¶ 23.) Specifically, Plaintiff alleges that "'ordinary DTS labor, support, maintenance, and operational activity' was being classified as CapEx rather than OpEx, thereby 'flowing through to Alignment's headline non-GAAP profitability metric, Adjusted EBITDA,' and that the issue 'implicated the accuracy, consistency, and integrity of the profitability measure Alignment emphasized to investors.'" (MTD Opp. at 16; FAC ¶¶ 7, 32, 223). Although Defendants argue that a "reasonable person with Plaintiff's background would recognize that an internal CapEx/OpEx classification dispute involves judgment-laden accounting determinations, not securities fraud" (MTD at 18), the court finds Plaintiff sufficiently alleges that a reasonable person in Plaintiff's high-ranking executive position could reasonably believe that the accounting misclassification was motivated by Alignment's "drive to reach positive Adjusted EBITDA" in violation of federal law, (MTD Opp. at 15). The court is also not persuaded by Defendants' argument that Plaintiff is attempting to "recharacterize those communications as whistleblowing in hindsight" because Plaintiff has specifically alleged that "he reasonably believed" the conduct constituted an SEC violation when he reported it to Alignment leadership. (FAC ¶ 223.) Moreover, Plaintiff is not required to prove that a violation of substantive law occurred. *See Van Asdale*, 577 F.3d at 1001 ("Congress chose statutory language which ensures that 'an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected.'") (internal citations omitted).

Accordingly, the court finds that Plaintiff has satisfied his burden to plausibly allege that he engaged in protected activity.

**4. Individual Liability as to Defendants Maroney, Wagner, and Scavo**

"The SOX Act imposes individual liability when a decision maker retaliates against an employee because [they] engaged in protected conduct. The Act is unusual in this respect, as most other employment retaliation laws provide only for employer liability." *Ellen Leznik v. Nektar Therapeutics, Inc.*, 2007 WL 5596626, at *11 (U.S. Dept. of Labor Nov. 16, 2007). When alleging that an individual defendant engaged in retaliatory conduct under SOX, a plaintiff must allege that the individual defendant had knowledge of the plaintiff's protected activity and participated in any adverse employment action against them. *Wadler*, 141 F. Supp. 3d at 1017-18. The court analyzes Plaintiff's allegations in this regard as to (a) Maroney and (b) Wagner (because the court has already found that Plaintiff's claims against Scavo fail because Plaintiff failed to exhaust administrative remedies).

**a. Maroney**

The court finds that Plaintiff sufficiently alleges that Maroney had knowledge of Plaintiff's protected activity and participated in the alleged adverse employment actions against him. Plaintiff alleges that he reported accounting irregularities to Maroney on March 29, 2025, and that she "discouraged [Plaintiff] from documenting his concerns in writing." (FAC ¶ 130.) Plaintiff further alleges that Maroney was "consulted on and signed off on the April 1 retraction" of Plaintiff's responsibilities, (FAC ¶ 132), participated in the April 9, 2025, meeting in which Plaintiff was told to accept a different role or leave Alignment, (FAC ¶ 159), and told Plaintiff that the "ideal" timing of his departure would be by the end of the month of April 2025, (FAC ¶ 161). Plaintiff also alleges that Maroney participated in the June 2025 decision to strip Plaintiff of his unvested equity in Alignment. (FAC ¶ 192.)

The court finds that these allegations are sufficient to plausibly state a retaliation claim against Maroney. While Defendants argue that Plaintiff's allegations contain "conclusory phrases," (MTD at 20), the court draws the reasonable inference that as President of Alignment, Maroney participated in the adverse employment actions that Plaintiff alleges. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556) (a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**b. Wagner**

The court finds that Plaintiff fails to sufficiently allege that Wagner had knowledge of Plaintiff's protected activity and participated in the alleged adverse employment actions against him. Plaintiff alleges that Wagner "“knew of [Plaintiff's] protected disclosures," (FAC ¶ 156); "personally denied all of [Plaintiff's] pending promotion requests for his team on March 29," (FAC ¶ 129); "delivered the organizational chart stripping virtually all of [Plaintiff's] responsibilities," (FAC ¶ 156); and asked Plaintiff, "[t]hen what are you going to do?" when Plaintiff stated that the changes constituted "a demotion" (FAC ¶ 156). Defendants argue that Plaintiff "pleads no facts establishing that Wagner made [the] decision[s] independently rather than at a superior's direction." (MTD at 21.) The court agrees. Further, the court finds that Plaintiff's allegation that "Wagner knew of [Plaintiff's] protected disclosures," (FAC ¶ 21), is conclusory and not supported by any further factual allegations. While Plaintiff has alleged that "Wagner had direct authority over personnel decisions, employment actions, performance management, and the investigation of employee complaints," (FAC ¶ 21), human resource officers routinely deliver promotion or demotion decision at the direction of company leaders. *See Leznik v. Nektar Therapeutics, Inc.*, 2007 WL 5596626, at *14 (Dep't of Labor Nov. 16, 2007) (declining to find HR President individually liable because they "merely effectuated" the termination and no facts demonstrated that they "were substantively involved in the termination decision"). For those reasons, the court finds that Plaintiff has not sufficiently alleged a plausible retaliation claim against Wagner.

### C. Leave to Amend

"Although leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)). Here, Plaintiff requests leave to amend "should the court find any deficiency in the FAC." (MTD Opp. at 20.) The court finds granting Plaintiff leave to amend as to Defendant Scavo would not serve any purpose because to grant it would be futile. *See id.* As stated above, Plaintiff failed to exhaust his administrative remedies against Scavo and his SOX claim against him is barred for that reason. On the other hand, the court has identified deficiencies with regard to Plaintiff's allegations of retaliation against Defendant Wagner that may be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts

consistent with the challenged pleading could not possibly cure the deficiency.'") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)). Under the circumstances presented here, the court finds it appropriate to exercise its discretion to **GRANT** Plaintiff leave to amend his complaint as to Defendant Wagner.

In summary, the court rules as follows: Defendants' Motion to Dismiss Plaintiff's SOX claim against Scavo is **GRANTED WITHOUT LEAVE TO AMEND**; Defendants' Motion to Dismiss Plaintiff's SOX Claim against Wagner is **GRANTED WITH LEAVE TO AMEND**, and Defendants' Motion to Dismiss Plaintiff's SOX Claim against the remaining Defendants is **DENIED**.

## IV. Defendant's Motion for Sanctions

Defendants seek sanctions against Plaintiff's counsel, arguing that "[n]o reasonable attorney that conducted the inquiry required by Rule 11 would have filed the SOX claim contained in the Complaint or the FAC" and that Plaintiff's "constructive discharge theory is not a good-faith legal claim." (Sanctions Mot. at 2, 14.) Specifically, Defendants argue that Plaintiff did not report his concerns to the SEC, the Audit Committee, or any other regulatory body. (Sanctions Mot. at 8.) They also point out that Plaintiff never used the word "fraud" or implied that investors were being deceived, instead he proposed to Kao "a new approach to handling these allocations" and stated that he was designing a "financial transparency model." (*Id.*) Defendants further argue that each executive that Plaintiff claims to have reported these concerns to "submitted sworn declarations under penalty of perjury denying that any such report was ever made" before OSHA. (Sanctions Mot. at 9.) Alignment's Audit Committee also "commissioned an independent investigation by a nationally recognized accounting firm" which found that the "applicable SOX control regarding the classification of labor as capital expenditures was designed efficiently and operated effectively to detect material errors in the financial statements." (Sanctions Mot. at 9.)

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

"Rule 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Simpson v. Lear Astronics Corp*., 77 F.3d 1170, 1177 (9th Cir. 1996). Rule 11 thus "imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. 533, 554 (1991). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

Having found Defendant's argument that Plaintiff's SOX claim is untimely and fails to state a plausible claim largely unpersuasive for the reasons stated above, the court finds that sanctions are unwarranted. Without taking a stance on the strength of Plaintiff's SOX claim, the court has determined that Plaintiff has sufficiently alleged a non-frivolous SOX claim against some defendants. *See Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988) (finding that if a complaint "states an arguable claim," sanctions are generally inappropriate); *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (stating courts "reserve sanctions for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose"); *see also Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) ("Rule 11 is intended to deter baseless filings in district court.'"). Accordingly, Defendant's Motion for Sanctions is **DENIED**.

## V. Disposition

For the foregoing reasons, the court **ORDERS** as follows:

1. Defendants' Motion to Dismiss Plaintiff's SOX claim against Defendant Scavo is **GRANTED WITHOUT LEAVE TO AMEND**;
2. Defendants' Motion to Dismiss Plaintiff's SOX Claim against Defendant Wagner is **GRANTED WITH LEAVE TO AMEND**;
3. Defendants' Motion to Dismiss Plaintiff's SOX Claim against the remaining Defendants is **DENIED**;
4. Defendants' Motion for Sanctions is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01764-FWS-ADS Date: October 5, 2026
Title: Hakan Kardes v. Alignment Healthcare, Inc., *et al.*

If Plaintiff believes he can amend the FAC to remedy the deficiencies identified in this Order, Plaintiff shall file an amended complaint on or before **October 26, 2026.** If Plaintiff declines to file a further amended complaint, the remaining Defendants shall file an answer to the FAC on or before **November 10, 2026.**

**IT IS SO ORDERED.**