**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| HAKAN KARDES,<br><br>Plaintiff,<br><br>v.<br><br>ALIGNMENT HEALTHCARE, INC., ALIGNMENT HEALTHCARE USA, LLC, JOHN KAO, DAWN MARONEY, ROBERT SCAVO, AND ANDREAS WAGNER,<br><br>Defendants. | Case No.: 8:26-cv-01764-FWS-ADS<br><br>**DECLARATION OF HAKAN KARDES PURSUANT TO THE COURT'S OCTOBER 26, 2026 ORDER (DKT. 54) AND IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION (DKT. 44)** |

I, Hakan Kardes, hereby declare and state as follows:

1. I am the Plaintiff in this action. I have personal knowledge of the facts stated in this declaration, and if called as a witness I could and would testify competently to them. I submit this declaration pursuant to the Court's October 26, 2026 Order (Dkt. 54) and, in particular, to describe the circumstances under which I signed the Employment Agreement dated April 11, 2021 (the "Agreement") (Dkt. 44-1, Ex. A).

2. On December 13, 2018, I received a written employment offer from Alignment. The offer was short and included the basic terms of my "at will" employment, including my salary and offered benefits. The letter stated that it "sets forth the basic terms of the offer, which will govern your employment with the Company." I accepted the offer and thereafter joined Alignment in January 2019 as Alignment's first Chief Data Officer. A copy of the offer letter is attached hereto as **Exhibit 1**. The offer letter did not include any arbitration provision, jury-trial waiver, or attorneys' fees provision.

3. When I joined Alignment, it was a private company. Subsequently, Alignment decided to go public and pursued an initial public offering ("IPO") in or around March 2021. Around the same time, in April 2021, I was also promoted to Chief Technology Officer.

4. In connection with Alignment's IPO and my promotion in 2021, I was told by my supervisors and members of Alignment's HR team that executives were entering into standard employment agreements and that I needed to sign one. The Agreement was presented to me as a standard form prepared by Alignment, which I was required to sign for my continued employment in my executive role. None of the Agreement's language was drafted by me or at my request.

5. In particular, at the time I signed the Agreement, I understood that Alignment used the same form of employment agreement for other senior executives. At that time, several Alignment executives—other than Mr. Kao, Ms. Maroney, and Mr. Freeman discussed below—told me they were being asked to sign the company's standard executive employment agreement.

6. I have since reviewed the employment agreements for Mr. Kao, Ms. Maroney, and Mr. Thomas Freeman that Alignment filed with the Securities and Exchange Commission around the time of its IPO, which are cited in my Opposition (Dkt. 50 at 16 n.1).[1] Their agreements are consistent with what I was told at the time: they are substantially similar to the one I signed and, in particular, Sections 13 (Arbitration) and 24 (Attorneys' Fees) of those agreements are, in substance, identical to the same sections of my Agreement.

7. I understood that signing the Agreement was a condition of continuing in my role at Alignment and of receiving the title and compensation associated with the

---

[1] Kao (https://www.sec.gov/Archives/edgar/data/1832466/000095017021000261/alhc-20210331-ex10_9.htm); Maroney (https://www.sec.gov/Archives/edgar/data/1832466/000095017021000261/alhc-20210331-ex10_10.htm); Freeman (https://www.sec.gov/Archives/edgar/data/1832466/000095017021000261/alhc-20210331-ex10_11.htm).

Chief Technology Officer position.

8. I did not negotiate, and was never offered the opportunity to negotiate, any standard provisions of the Agreement. I was sent the document via DocuSign and executed the Agreement through that portal. I do not have the DocuSign transmittal or audit records in my files—and as far as I am aware, all of the correspondence and related documents were sent to my Alignment email, which I no longer have access to. I do not recall precisely how long I had the DocuSign envelope before I signed. However long that was, the Agreement was presented as a required standard form, no one told me that the terms were open to negotiation, and I did not negotiate the arbitration provision or any other standard terms of the Agreement.

9. No one at Alignment explained the Agreement to me, walked me through its provisions, or pointed out Section 13 (Arbitration), including Section 13(c) (the jury-trial waiver) and Section 13(b) (the company's right to go to court for injunctive relief), Section 11(e) (injunctive relief without proof of damages or a bond), or Section 24 (Attorneys' Fees).

10. I was not represented by a lawyer in connection with the Agreement. As far as I recall, no one at Alignment suggested that I consult a lawyer before signing it, and I did not do so. I understand that the Agreement contains pre-printed language stating that the Employee has been advised to consult with legal counsel. That language was part of the standard form and appears in the employment agreements for Mr. Kao, Ms. Maroney, and Mr. Freeman as well.

11. I do not recall ever being given a copy of the JAMS Employment Arbitration Rules and Procedures referenced in Section 13(a), or being told where I could obtain them. I had never read those rules and did not know what they provided when I signed the Agreement.

12. When I signed the Agreement, I did not understand that I was agreeing to: (a) pay one-half of the arbitrator's fees and other costs of a JAMS arbitration; (b) a provision under which Alignment could seek injunctive relief against me in court,

without posting a bond or proving damages, while my claims against Alignment would have to be arbitrated; (c) give up my right to a jury in any action, including an action in court; (d) pay Alignment's attorneys' fees and costs if it prevailed in a dispute with me, including a dispute that was dismissed; or (e) arbitrate with anyone other than Alignment Healthcare USA, LLC, the only party to the Agreement besides me. None of these provisions was explained to me by anyone at Alignment.

13. The Agreement identifies Alignment Healthcare USA, LLC as the "Employer" and me as the "Employee," and it is signed by Mr. Kao on behalf of Alignment Healthcare USA, LLC and by me. No one told me, and I did not understand, that by signing the Agreement I was agreeing to arbitrate claims against Mr. Kao, Ms. Maroney, Mr. Scavo, Mr. Wagner, or any other individual personally, or that the term "Affiliate" in Section 1 would extend the arbitration provision to individual officers, directors, their family members, or shareholders.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2026, in Orange County, California.



Hakan Kardes