SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JOSHUA D. N. HESS, Cal Bar No. 244115
jdhess@sheppard.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Telephone: 415.434.9100
Facsimile: 415.434.3947

JASON A. WEISS, Cal Bar No. 185268
jweiss@sheppard.com
MEGAN T. POLOS, Cal. Bar No. 357247
Mpolos@sheppard.com
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

BRIDGET J. RUSSELL, Cal Bar No. 288107
brussell@sheppard.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: 310.228.3700
Facsimile: 310.228.3701

Attorneys for Defendants
ALIGNMENT HEALTHCARE, INC., ALIGNMENT HEALTHCARE USA, LLC, JOHN KAO, DAWN MARONEY, ROBERT SCAVO, AND ANDREAS WAGNER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| HAKAN KARDES,<br><br>Plaintiff,<br><br>v.<br><br>ALIGNMENT HEALTHCARE, INC., ALIGNMENT HEALTHCARE USA, LLC, JOHN KAO, DAWN MARONEY, ROBERT SCAVO, AND ANDREAS WAGNER,<br><br>Defendants. | Case No. 8:26-cv-01764-FWS-ADS<br><br>**DECLARATION OF JOSHUA D. N. HESS IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO CONFIRM SCOPE OF AUTOMATIC STAY PENDING APPEAL OR, ALTERNATIVELY, TO STAY PROCEEDINGS**<br><br>[Filed concurrently with Notice of Motion and Motion and [Proposed] Order]<br><br>Date: December 17, 2016<br>Time: 10:00 A.M.<br>Crtrm.: 10D |

# DECLARATION OF JOSHUA D. N. HESS

I, Joshua D. N. Hess, declare as follows: I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would competently testify to them.

1. I am an attorney duly admitted to practice before this Court and a partner with Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Defendants Alignment Healthcare, Inc., Alignment Healthcare USA, LLC, John Kao, Dawn Maroney, Robert Scavo, and Andreas Wagner (collectively, "Defendants"). I submit this declaration in support of Defendants' Notice of Motion and Motion to Confirm Scope of Automatic Stay Pending Appeal or, Alternatively, to Stay Proceedings.

2. On November 6, 2026, counsel for the parties met and conferred regarding Defendants' proposed motion to stay the entire action pending appeal and the requested extension of the deadline to respond to the First Amended Complaint. Defendants' counsel stated Defendants' position that the claims would be stayed upon the filing of a notice of appeal. Plaintiff's counsel conceded that, upon the filing of an appropriate notice of appeal, proceedings would be automatically stayed as to Counts II–VII, but reserved opposition to staying the SOX claim. The parties subsequently stipulated to extend Defendants' deadline to answer the SOX claim pending the Court's ruling on Defendants' motion to stay the entire action.

3. On November 13, 2026, Plaintiff served 99 separately numbered requests for production of documents by USPS First-Class Mail and provided a courtesy copy by email. Attached hereto as **Exhibit A** is a true and correct copy of those requests, together with the accompanying proof of service and email transmittal.

///

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 16, 2026, at San Francisco, California.

*/s/ Joshua D. N. Hess*
JOSHUA D. N. HESS

# EXHIBIT "A"

EXHIBIT "A"

**STERLINGTON, PLLC**
Jesse Sherrett (*pro hac vice*)
Jonathan Sherman (*pro hac vice*)
530 Fifth Avenue, Suite 804
New York, New York 10036
Tel: (212) 433-2993
jesse.sherrett@sterlingtonlaw.com
jonathan.sherman@sterlingtonlaw.com

**ARMOND WILSON, LLP**
Brenton R. Babcock (Bar No. 162,120)
100 Bayview Circle, Suite 300
Newport Beach, CA 92660
Tel: (949) 386-1341
brent.babcock@armondwilson.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| HAKAN KARDES,<br><br>Plaintiff,<br><br>v.<br><br>ALIGNMENT HEALTHCARE, INC., ALIGNMENT HEALTHCARE USA, LLC, JOHN KAO, DAWN MARONEY, ROBERT SCAVO, AND ANDREAS WAGNER,<br><br>Defendants. | Case No.: 8:26-cv-01764-FWS-ADS<br><br>**PLAINTIFF HAKAN KARDES'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION TO ALL DEFENDANTS**<br><br>Judge: Hon. Fred W. Slaughter<br>Magistrate Judge: Hon. Autumn D. Spaeth |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 34, Plaintiff Hakan Kardes ("Kardes") requests that Defendants Alignment Healthcare, Inc., Alignment Healthcare USA, LLC, John Kao, Dawn Maroney, Robert

Scavo, and Andreas Wagner, and each of them, serve written responses to the following Requests for Production within thirty (30) days after service, and produce the requested Documents and Electronically Stored Information for inspection and copying at the offices of Sterlington, PLLC, 530 Fifth Avenue, Suite 804, New York, New York 10036, or by secure electronic transfer to counsel for Kardes, on the date responses are due or at such other time, place, and manner as counsel may agree in writing.

These Requests are directed to each Defendant individually. Each Defendant must serve a separate written response and must produce responsive Documents within that Defendant's possession, custody, or control, including Documents that Defendant has the legal right or practical ability to obtain. A Defendant may not decline to produce a Document on the ground that another Defendant has produced or will produce it, but may identify by Bates number Documents already produced by another Defendant in lieu of a duplicate production.

## I. DEFINITIONS

The following definitions apply to each Request below. Each term is used in its ordinary sense except as provided here, and nothing in these definitions is intended to expand a Request beyond the scope of Rule 26(b)(1).

1. **"Action"** means the above-captioned action, *Kardes v. Alignment Healthcare, Inc., et al.*, No. 8:26-cv-01764-FWS-ADS (C.D. Cal.).

2. **"Adjusted EBITDA"** means the non-GAAP financial measure of that name reported by Alignment in its earnings releases, investor materials, and SEC filings, and used in the AIP and PSU performance formulas, including every component, adjustment, and reconciliation to GAAP net income or loss.

3. **"Adverse Actions"** means all retaliatory and adverse events alleged in the FAC, including: (a) the denial on or about March 29, 2025 of promotions and compensation adjustments for members of Kardes's team; (b) the cancellation or reversal on or about April 1, 2025 of the planned transition of DTS to Kardes's

oversight and of Kardes's planned expanded role and elevation to President of AVA Technologies, Chief Operating Officer, or a comparable position; (c) the removal of Kardes from AVA 2.0 on or about April 2, 2025; (d) the April 7, 2025 meeting attended by security personnel; (e) the transfer of Kardes's artificial-intelligence and data-science functions to Scavo and the organizational chart circulated on or about April 8, 2025; (f) Wagner's April 8, 2025 communication to Kardes that he would be stripped of virtually all of his meaningful responsibilities, effective immediately; (g) the proposal that Kardes assume a demoted role; (h) the circumstances under which Kardes submitted his April 9, 2025 notice of intent to resign, and his constructive discharge; (i) Kao's statements to Kardes at the Health Evolution Summit on or about April 10, 2025, including any threat of legal action; (j) any pressure on Kardes not to take action that could harm Alignment's stock price, including by reference to his vested equity; (k) the April 14, 2025 internal announcement of Kardes's departure; (*l*) the Form 8-K; (m) any other threat or statement Concerning Kardes's restrictive covenants made after his notice of intent to resign; (n) the Investigation, including any statement by You or Your counsel that Kardes would forfeit rights or compensation under the Employment Agreement; (o) the forfeiture or cancellation of Kardes's Equity Awards; and (p) the non-payment of the FY2024 Bonus, severance, pro rata bonus, COBRA reimbursement, 401(k) contributions, or other compensation claimed in the FAC.

4. **"AIP"** means Alignment's Annual Incentive Plan or any other annual cash incentive or bonus plan for executives in effect for fiscal years 2023 through 2025, including its performance metrics, weightings, targets, thresholds, calculations, accruals, certifications, and payouts.

5. **"Alignment" or the "Company"** means Defendant Alignment Healthcare, Inc., Defendant Alignment Healthcare USA, LLC, and their predecessors (including Alignment Healthcare Holdings, LLC), subsidiaries, and affiliates, and each

of their present and former officers, directors, employees, agents, attorneys, accountants, and other representatives.

6. **"Audit Committee"** means the Audit Committee of the Board and each of its present and former members and advisors.

7. **"Auditor"** means Alignment's independent registered public accounting firm(s) for fiscal years 2023 through 2025, and each of their partners, employees, and agents.

8. **"AVA"** means the Alignment Virtual Application platform and its successor or related versions, including "AVA 2.0."

9. **"Board"** means the Board of Directors of Alignment Healthcare, Inc. and each of its committees (including the Audit Committee and the Compensation Committee) and each of their present and former members.

10. **"Capitalization Practices"** means the policies, procedures, methodologies, judgments, approvals, and accounting entries by which Alignment classified, recorded, or reclassified costs—including internal labor, contractor, vendor, and software costs within or related to DTS—as capital expenditures ("CapEx") or operating expenses ("OpEx"), including under ASC 350-40 (Internal-Use Software) or any other accounting standard.

11. **"Communication"** means any transmission or exchange of information of any kind, whether oral, written, or electronic, including correspondence, e-mail, text or SMS/MMS messages, iMessage, WhatsApp, Signal, Microsoft Teams, Slack, or other instant or ephemeral messages, voicemail, meeting invitations, calendar entries, notes or recordings of meetings or calls, presentations, and social-media posts or messages.

12. **"Compensation Committee"** means the Compensation Committee of the Board and each of its present and former members and advisors.

13. **"Concerning"** means relating to, referring to, describing, discussing, evidencing, reflecting, constituting, supporting, contradicting, or commenting upon.

14. **"Document"** has the full meaning given in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and includes ESI, Communications, drafts, non-identical copies, and all metadata.

15. **"DTS"** means Alignment's Data Technology Solutions division, including its engineering, infrastructure, security, and related teams, under whatever name.

16. **"Employment Agreement"** means the Employment Agreement dated on or about April 11, 2021 between Kardes and Alignment Healthcare USA, LLC (Dkt. 44-1, Ex. A), together with all amendments, exhibits, side letters, and related agreements, including any agreement to arbitrate relied upon.

17. **"Equity Awards"** means every award of performance share units ("PSUs"), restricted stock units ("RSUs"), stock options, or other equity or equity-based compensation granted by Alignment to Kardes or any other Person, together with the governing plan documents, award agreements, vesting schedules, certifications, and any notice or determination of forfeiture, reinstatement, cancellation, or treatment upon separation.

18. **"ESI" or "Electronically Stored Information"** has the meaning given in Rule 34(a)(1)(A) and includes data in any system or medium, including e-mail systems, messaging platforms, Harvest, HRIS/payroll systems (e.g., Workday or equivalent), general-ledger and fixed-asset systems, board-portal systems, shared drives, cloud storage, and personal devices or accounts.

19. **"FAC"** means the First Amended Complaint filed September 3, 2026 (Dkt. 35).

20. **"Facets"** means the Facets claims-administration platform and Alignment's related implementation and transition projects, including all phases, modules, interfaces, configuration, data conversion and migration, testing, deployment, upgrades, maintenance, and ongoing operations, together with related vendor,

consulting, licensing, and hosting arrangements, regardless of the project name or code used.

21. **"Form 8-K"** means the Form 8-K filed by Alignment Healthcare, Inc. with the SEC on or about April 15, 2025 regarding Kardes, together with all drafts and exhibits.

22. **"FY2024 Bonus"** means the cash incentive award earned by Kardes under the AIP for fiscal year 2024, certified by the Compensation Committee at 141.7% of target, including the portion paid and the portion withheld.

23. **"Harvest"** means the Harvest time-tracking system (and any predecessor, successor, or related system or export) used by DTS personnel to record time, including all project codes (including the "SI," "NE," and "SU" codes), time entries, edit and approval histories, audit logs, reports, and exports.

24. **"Individual Defendants"** means Defendants John Kao ("Kao"), Dawn Maroney ("Maroney"), Robert Scavo ("Scavo"), and Andreas Wagner ("Wagner").

25. **"Investigation"** means any inquiry, review, or investigation undertaken by or on behalf of Alignment, the Board, or the Audit Committee, including by Sheppard, Mullin, Richter & Hampton LLP and any accounting or forensic firm, Concerning (a) the Protected Reports, (b) the Capitalization Practices, or (c) Kardes, including the inquiry described in FAC ¶¶ 187–194.

26. **"Kardes"** means Plaintiff Hakan Kardes.

27. **"OSHA Proceeding"** means the administrative proceeding before the U.S. Department of Labor, Occupational Safety and Health Administration, initiated by Kardes's complaint filed October 14, 2025, OSHA File No. 301064300.

28. **"Person"** means any natural person or any business, legal, or governmental entity or association.

29. **"Protected Reports"** means each oral or written report, complaint, concern, or inquiry by Kardes—directly or through counsel—Concerning the Capitalization Practices, the classification of DTS costs as CapEx or OpEx, the

accuracy of Adjusted EBITDA, compensation practices, including AIP and other bonus formulas, performance metrics and calculations, employee performance ratings and calibration, compensation accruals and liabilities, and related Equity Award determinations, or related accounting, internal-control, or securities-law matters, including Kardes's earlier objections and subsequent or supplemental reports alleged in the FAC and all related Communications, regardless of whether those reports related to, or were interpreted as a report regarding, any specific violation of law.

30. **"Relevant Period"** means January 1, 2024 through the date of Your response, unless a Request specifies a different period. Requests Concerning Kardes's hiring, roles, compensation, performance, and Equity Awards extend from January 1, 2019; Requests Concerning the Capitalization Practices and the AIP and PSU formulas extend from January 1, 2023. References to specified fiscal years or accounting periods do not exclude later-created Documents Concerning those years or periods, including analyses, corrections, reclassifications, investigations, and related Communications through the date of Your response.

31. **"SEC"** means the United States Securities and Exchange Commission.

32. **"You" and "Your"** mean the Defendant responding to these Requests, and, for a corporate Defendant, include the Persons encompassed by the definition of Alignment; for an Individual Defendant, include that Defendant's agents, representatives, and any personal device, account, or storage location where responsive information may be found.

## II. INSTRUCTIONS

A. **Scope and time.** Unless otherwise stated, each Request seeks Documents created, sent, received, or in effect during the Relevant Period. Each Request seeks Documents in Your possession, custody, or control within the meaning of Rule 34(a)(1), including Documents held by Your attorneys, accountants, consultants, board-portal or e-discovery vendors, and—for the Individual Defendants—on personal devices and in personal accounts where responsive information may be found.

B. **Written response.** Pursuant to Rule 34(b)(2)(B)–(C) and Local Rule 34-2, Your written response must quote each Request in full immediately before Your response; state, for each Request, that inspection and production will be permitted as requested or state with specificity the grounds for any objection, including the reasons; state whether any responsive materials are being withheld on the basis of an objection; and, if You object to part of a Request, specify the part and produce Documents responsive to the remainder.

C. **Form of production of ESI.** Pursuant to Rule 34(b)(1)(C) and (b)(2)(E), and subject to any stipulated ESI order entered in this Action (which shall control upon entry), Kardes specifies the following forms: (a) spreadsheets, financial models, Harvest data, general-ledger, sub-ledger and fixed-asset data, databases, audio and video files, and presentations with speaker notes shall be produced in native format with all metadata and formulas intact, accompanied by a slip-sheet bearing the Bates number and confidentiality designation; (b) all other ESI shall be produced as single-page, Bates-numbered, text-searchable TIFF or PDF images with document-level extracted text and standard load files (.dat/.opt) containing at least the following metadata fields: BegBates, EndBates, BegAttach, EndAttach, Custodian, All Custodians, From, To, CC, BCC, Subject, DateSent, DateReceived, DateCreated, DateModified, FileName, FileExtension, Author, MD5Hash, and NativeLink; (c) text, chat, and other messaging data shall be produced in a form that preserves the conversation thread, participants, timestamps, and attachments; (d) parent-child relationships shall be preserved; and (e) hard-copy Documents shall be scanned and produced as text-searchable images with logical unitization. ESI shall not be converted to a form that removes or degrades metadata, searchability, or functionality.

D. **Organization.** Pursuant to Rule 34(b)(2)(E)(i), Documents shall be produced as they are kept in the usual course of business (with custodian and source identified) or organized and labeled to correspond to the categories in these Requests.

E. **Privilege and work product.** If any Document or portion is withheld or redacted on a claim of privilege, work-product protection, or any other protection, You shall comply with Rule 26(b)(5)(A) by serving, with Your production (or at a time as agreed by the parties), a log that identifies for each item: the date; author(s); all recipients (including cc and bcc), with attorneys identified; the document type; the general subject matter; the privilege or protection asserted; and the Request(s) to which it is responsive. Redactions shall be clearly marked on the face of the Document.

F. **Lost or destroyed Documents.** If any responsive Document has been lost, deleted, destroyed, or is otherwise no longer in Your possession, custody, or control, identify the Document, the date and circumstances of its loss or disposition, the Person(s) responsible, and any Person believed to possess a copy, and state whether a litigation hold applied to it.

G. **Construction.** The singular includes the plural and vice versa; "and" and "or" are both conjunctive and disjunctive; "any" and "each" include "all"; "including" means "including without limitation"; and the past tense includes the present and vice versa. Headings are for convenience and do not limit any Request.

H. **No Documents.** If no Documents exist that are responsive to a Request, Your response shall so state.

I. **Continuing obligation.** These Requests are continuing. You must supplement Your responses and production in accordance with Rule 26(e)(1).

## III. REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Kardes's complete personnel file, as that term is used in Cal. Lab. Code § 1198.5 and RCW 49.12.240–.250, including all offer letters, job descriptions, title changes, performance evaluations, commendations, disciplinary records, and separation Documents, from January 1, 2019 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

The Employment Agreement and all drafts, amendments, side letters, and Communications Concerning its negotiation, interpretation, or performance, including the meaning of "Good Reason," "Cause," and Sections 4, 6, and any restrictive-covenant provisions.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents Concerning Kardes's roles and responsibilities, including as Chief Data Officer, Chief Technology Officer, Chief Experience Officer, and Chief Transformation Officer, and all job descriptions, role outlines, organizational charts, and announcements reflecting those roles or any proposed or implemented expansion, reduction, or transfer of his responsibilities, including the reasons, approvals, effective dates, and dates those changes were communicated to Kardes.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents Concerning any plan, proposal, or discussion to expand Kardes's role, to transition DTS or any DTS function, clinical operations, claims appeals, or any other function to Kardes's oversight, or to elevate Kardes to a President, President of AVA Technologies, Chief Operating Officer, or comparable position, or to defer, modify, cancel, or reverse any such expansion, transition, or elevation, including the reasons, approvals, and timing of each decision, including any Communications among Kao, Maroney, Scavo, Wagner, Thomas Freeman ("Freeman"), the Board, or other participants on those subjects.

**REQUEST FOR PRODUCTION NO. 5:**

All performance evaluations, ratings, calibrations, 360 reviews, and talent or succession-planning Documents Concerning Kardes, including underlying feedback, assessments, commendations, recommendations, and Documents presented to the Board or Compensation Committee, and all Documents Concerning any proposed or implemented changes to those evaluations or ratings, including the reasons, approvals, Persons involved, dates of changes, and available audit trails or version histories.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents Concerning Kardes's actual work, performance, accomplishments, and expanded responsibilities during January 1, 2025 through May 16, 2025, including his involvement in DTS budgeting, AVA 2.0, data science and AI, Stars, Medicare Risk Adjustment, Clinical Operations, Care Anywhere (CAW), defining and evaluating capital projects, reviewing individuals' actual work and labor allocations, assessing or overseeing Facets, and preparing or presenting analyses, recommendations, or plans to Kao, the Board, or other executives, including related work products, presentations, drafts, supporting analyses, meeting records, feedback, and Communications.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Concerning Kardes's compensation from January 1, 2019 to the present, including base salary, merit increases, AIP targets and payouts, discretionary bonuses, Equity Awards, benefits, and the recommendations and approvals for each.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents constituting or Concerning Kardes's Equity Awards, including plan documents, award agreements, grant notices, vesting schedules, performance certifications (including the March 2025 certification of the September 2023 PSU award at 116.8% of target), and all Documents Concerning the forfeiture, cancellation, reinstatement, restoration, or other treatment of any Equity Award before, upon, or following Kardes's separation, including any requests, proposals, approvals, denials, or conditions Concerning reinstatement or restoration, and any Communications with the plan administrator or transfer agent.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents Concerning the "Equity Planning" and "AIP/Merit" processes for 2025 or equivalent processes conducted in 2025 as they related to Kardes or members of his organization, including FY2024 awards determined or processed in 2025, applicable criteria, instructions, budgets, and caps, original and revised

recommendations, ratings, allocations, calculations, and approvals, and any decisions to modify, deny, defer, cancel, or reinstate proposed compensation or Equity Awards, including the reasons, timing, and Persons involved.

**REQUEST FOR PRODUCTION NO. 10:**

All public or internal statements by Defendants or anyone else employed or associated with Alignment praising or recognizing Kardes's performance, including LinkedIn posts, leadership-meeting remarks, press releases, investor materials, and award nominations.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents Concerning the "Merit 2025" and promotion requests submitted by or for Kardes's direct reports and team in 2025, including Communications Concerning those promotions and the decision to deny or defer them.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents constituting or Concerning the Protected Reports, including every Communication in which Kardes raised, explained, or supplemented his concerns, directly or through counsel, notes, summaries, minutes, calendar entries, or recordings reflecting oral reports, Documents reflecting when and by whom the reports were received, circulated, discussed, or addressed, and any responses or proposed or implemented actions, and every Communication among You or with any Person Concerning the classification of DTS costs as CapEx or OpEx, the need to "migrate" or move dollars from CapEx to OpEx, or the accuracy of Adjusted EBITDA.

**REQUEST FOR PRODUCTION NO. 13:**

All Communications among or between Kao, Maroney, Scavo, Wagner, Freeman, Scott Ropp ("Ropp"), Mike Lewis ("Lewis"), Christopher Joyce ("Joyce"), any member of the Board, or any other current or former officer, employee, agent, or advisor of Alignment, including accountants and auditors, and any other Person affiliated with Alignment Concerning the Protected Reports, including Communications Concerning their receipt, circulation, escalation, investigation, or

response, and whether or how Kardes's concerns should be documented in writing or communicated orally, including any instruction to avoid or limit written documentation.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents Concerning the March 13, 2025 presentation to the executive team (CEOC) Concerning the 2025 Strategic Initiatives, including the presentation, speaker notes, attendee lists, recordings, and all Communications Concerning it.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents Concerning any inquiry, subpoena, or voluntary request for information from the SEC or any other governmental authority Concerning the Capitalization Practices, Adjusted EBITDA, the Protected Reports, Kardes, or this Action, and all responses thereto.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, including notes, calendar entries, meeting invitations, agendas, meeting materials, recordings, transcripts, and follow-up Communications Concerning any meeting, call, or discussion from January 1, 2024 through the date of Your response in which Kardes or his counsel participated with any of Kao, Maroney, Scavo, Wagner, Freeman, Ropp, Lewis, Joyce, any member of the Board, or any other Person acting on Alignment's behalf, Concerning the Capitalization Practices, Kardes, Adjusted EBITDA, the Protected Reports, Kardes's role, responsibilities, compensation, or separation, the Investigation, the Adverse Actions, the OSHA Proceeding, or this Action.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Concerning any report, complaint, concern, or update raised by any Person other than Kardes, from January 1, 2023 to the present, Concerning the Capitalization Practices, Harvest time coding, the accuracy of Adjusted EBITDA, or the nature of the work actually performed by DTS personnel or other personnel whose labor was budgeted, allocated, or treated as capitalizable, including reports, concerns,

or updates communicated to supervisors, managers, executive leadership, Finance, Human Resources, or Legal personnel, hotline, ethics-line, or whistleblower-policy submissions and Alignment's response.

**REQUEST FOR PRODUCTION NO. 18:**

All written policies, procedures, accounting memoranda, white papers, and guidance Concerning the Capitalization Practices, including policies for capitalizing internal-use software development costs under ASC 350-40 and for distinguishing application-development-stage activities from maintenance, support, bug-fixing, or other OpEx activities, and all revisions from January 1, 2023 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents Concerning the labor-capitalization methodology applied to DTS personnel and any other employees or contractors whose labor was budgeted, allocated, or treated as capitalizable for AVA, Facets, or other projects covered by the Capitalization Practices, regardless of department, cost center, or reporting relationship, including capitalization rates, the mapping of Harvest codes (including "SI," "NE," and "SU") to CapEx or OpEx, standard or blended hourly rates and their derivation, approval, changes, and comparison to actual payroll and eligible employee costs, allocation keys, the hours and denominators used to calculate capitalization percentages and amounts, the treatment of non-capitalizable time and hours exceeding 40 per week, any cap, normalization, omission, or exclusion of non-capitalizable time, any negative OpEx allocations or balances, extraction specifications, saved queries, filters, scripts, formulas, macros, mappings, manual overrides, and controls, reconciliations connecting recorded hours, amounts extracted from Harvest, files sent to Finance, payroll or contractor costs, capitalized amounts, general-ledger entries, and all spreadsheets or models used to compute capitalized labor from January 1, 2023 through the date of Your response.

**REQUEST FOR PRODUCTION NO. 20:**

For the period from January 1, 2023 through the date of Your response, produce (a) a complete export, in a reasonably usable structured format, of all Harvest data for DTS personnel and the other employees and contractors described in Request No. 19, including former or transferred personnel; (b) Harvest project-setup and individual-assignment records and histories showing project codes and designations, creation and activation dates, assigned individuals, allocated hours, and changes to those records; and (c) all retained historical exports, extracts, reports, and files actually supplied to or used by Finance or Accounting to calculate, review, or record capitalized labor, in the versions supplied or used, together with records of their transmission, including every time entry, project and task code, user, hours, notes, submission and approval status, and the complete edit, modification, and audit history for each entry, including all recorded hours for those individuals, whether capitalizable or non-capitalizable and whether or not charged to capital projects.

**REQUEST FOR PRODUCTION NO. 21:**

Documents and Communications sufficient to show the nature and timing of the work actually performed by DTS personnel and the other employees and contractors described in Request No. 19 from January 1, 2023 through the date of Your response, whether that work involved development or day-to-day production, operations, maintenance, support, bug fixes, or configuration. This Request applies regardless of how the work was budgeted, coded, or accounted for and regardless of whether the records expressly reference accounting, capitalization, or Harvest.

**REQUEST FOR PRODUCTION NO. 22:**

Documents and Communications sufficient to show the definition, scope, features or functionality to be developed, expected business outcomes and return on investment, feasibility, approvals, funding, resource allocations, project stages, and capitalization eligibility of each project for which costs were budgeted, allocated, or treated as capitalizable from January 1, 2023 through the date of Your response,

including records showing whether and when each project or component was approved, the amount approved, when it was created or activated in Harvest, when work began and time was first charged, when capitalization began, was suspended or resumed, or ended, and when the project or component went live, entered production, or became ready for its intended use.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents Concerning any instruction, direction, encouragement, or pressure given to DTS personnel or their managers or other employees or contractors involved in the Capitalization Practices Concerning how to code time in Harvest, including instructions to code support or maintenance work to capitalizable projects, meet budget or capitalization targets, enter only capital-related hours, omit non-capitalizable hours or hours exceeding 40 per week, charge time before project approval, or choose designated codes irrespective of the work performed, and all Documents Concerning after-the-fact changes to time entries.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents Concerning the DTS 2025 budget, any 2025 CapEx presentation, and the direction that total CapEx be reduced to approximately $28 million, including all drafts, versions, and Communications.

**REQUEST FOR PRODUCTION NO. 25:**

General-ledger detail, fixed-asset and intangible-asset sub-ledger detail, journal entries (including manual entries, with supporting documentation and approvals), and roll-forward schedules for capitalized software and capitalized internal labor from January 1, 2023 through the date of Your response, in native format, including related expense offsets or credits, reclassifications, corrections, reversals, write-offs, impairment entries, and amortization, source-period and posting-period fields, entry and modification dates, preparer and approver identifiers, retained audit trails, project-to-asset mappings, work-in-progress and placed-in-service balances, useful-life and amortization determinations, and supporting allocation and reconciliation workbooks

and existing crosswalks linking the accounting entries to Harvest data, historical Finance extracts, payroll or contractor costs, project and individual identifiers, and capitalization calculations.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show, for each quarterly and annual period from January 1, 2023 to the present, the calculation of Adjusted EBITDA, including each component and adjustment, the reconciliation to GAAP net income or loss, and the effect of capitalized labor covered by the Capitalization Practices on each, including the underlying calculation workbooks, formulas, source data, assumptions, internal versions, revisions, and approvals supporting those calculations and reconciliations, with spreadsheets produced in native format with formulas intact.

**REQUEST FOR PRODUCTION NO. 27:**

All drafts of, and Communications Concerning, Alignment's February 27, 2025 earnings release and related investor presentation and call script, including the statements that fiscal year 2024 was the Company's "first full year of positive adjusted EBITDA as a public company" and the 2025 Adjusted EBITDA guidance of $35 million to $60 million.

**REQUEST FOR PRODUCTION NO. 28:**

All Communications with, and Documents provided to or received from, the Auditor Concerning the Capitalization Practices, capitalized software or labor, Harvest, the Protected Reports, the Investigation, or Kardes, including management representation letters, audit-committee communications, summaries of unadjusted differences, and control-deficiency or significant-deficiency communications for fiscal years 2023 through 2025.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents Concerning any assessment, test, or evaluation of internal control over financial reporting (including under Section 404 of the Sarbanes-Oxley Act) relating to the Capitalization Practices or Harvest time coding from fiscal year

2023 through the date of Your response, including identified deficiencies and remediation plans.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents Concerning any analysis, consideration, or determination of whether any correction, reclassification, adjustment, out-of-period adjustment, or restatement of capitalized costs, OpEx, CapEx, or Adjusted EBITDA was required or appropriate for any period from January 1, 2024 through the date of Your response, and all Documents Concerning any such correction actually made.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents Concerning the "Update – Gaps in SOX Coverage and Claims Accuracy Reporting" Communications on or about March 28, 2025, and any other Documents from the Relevant Period identifying gaps in Sarbanes-Oxley controls coverage.

**REQUEST FOR PRODUCTION NO. 32:**

All minutes, agendas, presentations, resolutions, and materials of the Board and Audit Committee from January 1, 2024 to the present Concerning the Capitalization Practices, capitalized software, Facets and its implementation, project status, delays, budgets, costs, and accounting treatment, Adjusted EBITDA, the Protected Reports, the Investigation, or Kardes, including the "Upcoming Audit Committee" materials circulated on or about April 3, 2025.

**REQUEST FOR PRODUCTION NO. 33:**

Documents sufficient to identify each Person who was responsible for, performed, reviewed, or approved any of the following steps from fiscal years 2023 through the date of Your response, and to show each Person's role, reporting line, and period of responsibility or involvement:

(a) Developing, interpreting, approving, implementing, or revising Alignment's enterprise-wide Capitalization Practices and related internal controls, or authorizing exceptions to those practices;

(b) Defining, evaluating, and approving projects proposed for capitalization, their scope, intended use, and budgets;

(c) Creating or modifying projects and project codes in Harvest and assigning or approving their CapEx or OpEx designations;

(d) Assigning employees or contractors to projects and allocating their hours and labor budgets;

(e) Instructing individual time submitters on how to record or code their work;

(f) Communicating the accounting treatment or implications of their time entries to individual time submitters;

(g) Reviewing, approving, or changing Harvest time entries;

(h) Extracting, filtering, modifying, or transmitting Harvest data used to calculate or record capitalized labor;

(i) Determining the total hours used in the calculation, the hours treated as capitalizable, the applicable labor rates and allocation percentages, and the resulting amounts capitalized;

(j) Reviewing or approving capitalization calculations and conclusions, including when capitalization should begin, be suspended, resume, or end;

(k) Entering, posting, approving, or reconciling the resulting entries in the general ledger or other accounting systems; and

(l) Preparing materials for or participating in discussions with the Auditor concerning the Capitalization Practices, their application, or related internal controls; seeking the Auditor's review, concurrence, or approval; or documenting, responding to, or relying on the Auditor's questions, findings, objections, or conclusions.

**REQUEST FOR PRODUCTION NO. 34:**

All engagement letters, retention agreements, statements of work, budgets, and invoices Concerning the retention of Sheppard, Mullin, Richter & Hampton LLP, any accounting or forensic firm, or any other Person in connection with the Investigation,

and all Documents sufficient to show who retained each such Person, when, and for what scope.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents Concerning the scope, work plan, methodology, witness list, document requests, and timeline of the Investigation, and all Documents collected, reviewed, or relied upon in the Investigation.

**REQUEST FOR PRODUCTION NO. 36:**

All interview notes, memoranda, summaries, outlines, recordings, and transcripts of interviews conducted in the Investigation, and all Communications scheduling or Concerning any request to interview Kardes or any other potential witness, including engineers, team leaders, time-entry administrators, and Finance personnel.

**REQUEST FOR PRODUCTION NO. 37:**

All reports, findings, conclusions, presentations, and summaries—whether written or oral and whether interim or final—resulting from the Investigation, including drafts, prior versions, attachments, and Documents reflecting oral findings or briefings, and all Documents Concerning their presentation, distribution, disclosure, or characterization to the Board, the Audit Committee, management, the Auditor, insurers, the SEC, or any other Person, including descriptions of the Investigation or its findings in the OSHA Proceeding, this Action, or public statements.

**REQUEST FOR PRODUCTION NO. 38:**

All Communications between Alignment, the Board, or the Audit Committee, on the one hand, and Sheppard, Mullin, Richter & Hampton LLP or any accounting or forensic firm, on the other, Concerning the Investigation, including Communications Concerning the decision to have Jason A. Weiss or other counsel of record in this Action conduct the Investigation.

**REQUEST FOR PRODUCTION NO. 39:**

All Communications between You (including Your counsel) and Kardes or Kardes's counsel from January 1, 2025 through the date of Your response, including all Communications Concerning the Protected Reports, Kardes, Kardes's role, performance, or separation, the Investigation, requests or demands for cooperation or participation in interviews, Kardes's compensation, Equity Awards, severance, restrictive covenants, the OSHA Proceeding, this Action, or the release or forfeiture of any rights.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents Concerning any decision, recommendation, or discussion to condition, delay, or deny payment of any compensation to Kardes, or to treat any of Kardes's Equity Awards as forfeited, or to preserve, continue vesting, reinstate, or restore any compensation or Equity Awards by reference to the Protected Reports, the Investigation, Kardes's cooperation with it, or Kardes's assertion of claims.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents Concerning each Adverse Action, including all Documents Concerning who made or participated in each decision, when the decision was made and communicated, and the reasons for it.

**REQUEST FOR PRODUCTION NO. 42:**

All Communications among or between any of the Individual Defendants, Freeman, Joyce, Joseph Konowiecki ("Konowiecki"), or any other member of the Board Concerning Kardes from January 1, 2024 through the date of Your response, and Concerning the Capitalization Practices, Adjusted EBITDA, the Protected Reports, the Investigation, the OSHA Proceeding, or this Action.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents Concerning the decision on or about April 1, 2025 to cancel, reverse, or defer the transition of DTS (or any DTS function) to Kardes's oversight,

including Communications with any Board member referenced by Kao as having been consulted.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents Concerning the decision to remove Kardes from AVA 2.0 and to transfer AVA, artificial-intelligence, or data-science responsibilities to Scavo or any other Person.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents Concerning the April 7, 2025 meeting with Kardes, including the decision to have security personnel attend, badge-access and visitor logs for that date, the "Enhanced Security Access Policy," the "Enhanced security procedures at HQ" Communications and "Manager FAQ" circulated on or about April 5–7, 2025, and all Communications Concerning those measures.

**REQUEST FOR PRODUCTION NO. 46:**

All drafts and final versions of the organizational chart(s) circulated on or about April 8, 2025 reflecting changes to Kardes's role or reporting lines, and all Communications Concerning their preparation and dissemination.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Communications from October 1, 2024 through the date of Your response Concerning Kardes's leadership of, work on, or contributions to Stars litigation, including:

(a) Kardes's analyses, calculations, recommendations, presentations, and work products; leadership's positions and assessments Concerning the disputed Star Ratings issues; and any review, verification, validation, adoption, use, praise, or criticism of Kardes's work by executives, Board members, counsel, experts, or other advisors;

(b) The litigation's progress, outcome, settlement, or other resolution; resulting changes to Star Ratings or financial or operational benefits to Alignment; and assessments of Kardes's contribution to those results, including assessments made after his separation;

(c) Related press releases, investor communications, internal announcements, and other public statements, including drafts, supporting factual materials, review and approval Communications, and discussions Concerning attribution or recognition of the work performed;

(d) Proposed or implemented changes to Kardes's Stars litigation responsibilities, or any continuing, modified, or alternative role discussed or offered in April–May 2025, including Chief of Staff, Member Experience/Stars, or consulting arrangements. Include the April 2–7, 2025 "Stars Litigation Update" and "Alignment Star Rating Suit" Communications insofar as they Concern Kardes's role and performance.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents Concerning Kardes's April 9, 2025 e-mail (Dkt. 40-2, Ex. A) and the meetings and Communications of April 8–May 16, 2025 Concerning Kardes's continued employment, any transition period, and any statement by Kao or Maroney Concerning Kardes's options.

**REQUEST FOR PRODUCTION NO. 49:**

All drafts and final versions of, and all Communications Concerning, the April 14, 2025 "Announcing New Leaders – AVA and Member Experience" announcement and any other internal or external announcement of Kardes's departure, including Communications Concerning the timing, wording, and distribution of the announcement.

**REQUEST FOR PRODUCTION NO. 50:**

All drafts of the Form 8-K; all Communications Concerning its preparation, content, timing, and filing (including with outside securities counsel, the Board, and the SEC); all disclosure-committee materials Concerning it; and all Documents Concerning the decision to describe Kardes's resignation as "effective immediately" and to identify him as Chief Experience Officer.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents Concerning any inquiry, comment, or reaction from any investor, analyst, employee, business partner, recruiter, or member of the press Concerning Kardes's departure or the Form 8-K, and all responses by You.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents reflecting statements made by You or on Your behalf to or among any current or former employee, officer, director, contractor, or advisor, or any member of the press, analyst, investor, business contact, or other Person Concerning Kardes, the Protected Reports, the OSHA Proceeding, or this Action, and all drafts and Communications Concerning those statements.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents Concerning the resignations of Moez Slimi and Georgie Sam, including their resignation Communications, exit interviews, retention offers, Communications Concerning promotions or compensation promised to them, and all Documents Concerning any attribution of their departures to Kardes.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents Concerning any complaint, concern, or allegation about Kardes's performance, conduct, and practices made by any Person at any time, including the allegations described in Defendants' submissions in the OSHA Proceeding, together with all Documents Concerning the investigation and documentation of each such complaint and Documents sufficient to show when each was first recorded in writing and to whom it was communicated.

**REQUEST FOR PRODUCTION NO. 55:**

All Communications between any Individual Defendant and Joseph Konowiecki or any other member of the Board Concerning Kardes from January 1, 2025 through the date of Your response, including Concerning the discussions alleged in FAC ¶¶ 139–140.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents Concerning Kardes's transition and offboarding between April 9 and May 16, 2025, including transition plans, access-revocation records, device-return records, final-pay calculations, and Communications Concerning Kardes's continued work during that period.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents Concerning the FY2024 Bonus, including the Compensation Committee's certification of the FY2024 AIP at 141.7% of target, the original and revised performance criteria, formulas, weightings, multipliers, caps, and calculation methodologies applied to Kardes's award, Kardes's performance evaluations, ratings, calibrations, and any proposed or implemented changes thereto, preliminary and final award calculations and supporting data, original and revised accruals, estimates, adjustments, journal entries, and supporting analyses reflecting Kardes's FY2024 Bonus liability and its effect on reported expenses or Adjusted EBITDA, the payment of the first portion, the decision to withhold the remaining portion, the identity of each Person involved in these determinations or changes, the timing of each, and every reason for it.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents Concerning any decision to pay, or to split, defer, or hold back any portion of, fiscal year 2024 AIP awards to executives generally, including the proxy-statement disclosures Concerning payment of held-back amounts in the fourth quarter of 2025, and Documents sufficient to show whether and when each other executive's held-back portion was paid.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents Concerning whether Kardes's separation constituted a termination Without Cause, a resignation With Good Reason, or a voluntary resignation under the Employment Agreement or any equity plan, including any

analysis of Kardes's entitlement to severance, pro rata bonus, COBRA reimbursement, or accelerated or continued vesting.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents Concerning amounts withheld from Kardes's compensation for 401(k) contributions, and the remittance (or non-remittance) of such amounts to Kardes's retirement account, including payroll registers, plan-administrator records, and corrective filings.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents Concerning Kardes's final paycheck, accrued paid time off, expense reimbursements, and benefits continuation.

**REQUEST FOR PRODUCTION NO. 62:**

All Communications by Kao or any other Person acting for Alignment, from January 1, 2025 through the date of Your response, Concerning Kardes's restrictive covenants, non-solicitation or confidentiality obligations, vested or unvested Equity Awards, or any threatened, contemplated, or actual action against Kardes, including Communications referenced in FAC ¶¶ 306 and 333.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents Concerning any Communication by You with any current, former, or prospective employer, recruiter, investor, board, conference organizer, or business contact of Kardes Concerning Kardes since April 1, 2025, including any reference, background, or informal inquiry.

**REQUEST FOR PRODUCTION NO. 64:**

All Documents that You contend evidence any legitimate, non-retaliatory reason for any Adverse Action, including any performance, interpersonal, or conduct concern Concerning Kardes, and all Documents reflecting when each such concern was first documented and to whom it was communicated.

**REQUEST FOR PRODUCTION NO. 65:**

All Documents Concerning any statement by You or on Your behalf—in the OSHA Proceeding, in this Action, in internal leadership and employee briefings, to the press, or otherwise—of the reasons for Kardes's separation or for any Adverse Action, including drafts of each such statement.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents Concerning the roles, responsibilities, performance evaluations, compensation, and any discipline or adverse action Concerning Scavo from January 1, 2023 to the present, including Documents Concerning his responsibility for DTS budgets, Facets, and the Capitalization Practices.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents Concerning each Individual Defendant's roles, responsibilities, performance evaluations, ratings, calibrations, feedback, leadership, management, or workplace conduct and any discipline or adverse action from January 1, 2023 to the present.

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to identify each executive at the Senior Vice President level or above who separated from Alignment between January 1, 2023 and the present, the stated reason for separation, the severance and Equity Award treatment afforded, and whether a Form 8-K or internal announcement was issued, and copies of each such announcement.

**REQUEST FOR PRODUCTION NO. 69:**

Alignment's whistleblower, anti-retaliation, code of conduct, open-door, complaint-investigation, and ethics-hotline policies and procedures in effect from January 1, 2023 to the present, including all revisions, and Documents sufficient to show training provided to the Individual Defendants on those policies.

**REQUEST FOR PRODUCTION NO. 70:**

All Documents Concerning any complaint made by a current or former employee from January 1, 2021 to the present that (a) alleges retaliation, whistleblower retaliation, or wrongful termination by Alignment or any Individual Defendant; (b) concerns management practices or workplace conduct by any Individual Defendant; or (c) concerns the performance, behavior, leadership, or workplace conduct of any Individual Defendant or any employee promoted or appointed in connection with the 2025 reorganization or selected to assume any of Kardes's responsibilities, including the complaint, records showing when and to whom it was reported, any investigation and findings, the resolution, and any corrective or disciplinary action, with personal identifying information of non-parties redacted as necessary.

**REQUEST FOR PRODUCTION NO. 71:**

Alignment's executive severance, change-in-control, and equity plan documents, and the Compensation Committee's charters, minutes, and materials from January 1, 2023 to the present Concerning executive separations, the FY2024 and FY2025 AIP, the PSU performance formulas (including any changes thereto), and discretionary bonuses.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to show, for each Individual Defendant and Thomas Freeman, the AIP target, corporate and individual performance metrics, achieved metrics, certification, and payout for fiscal years 2023, 2024, and 2025, including every calculation in which Adjusted EBITDA was an input.

**REQUEST FOR PRODUCTION NO. 73:**

Documents sufficient to show, for each Individual Defendant and Thomas Freeman, every Equity Award outstanding at any time from January 1, 2022 to the present, the performance metrics and vesting conditions for each, and all certifications or determinations of performance achievement.

**REQUEST FOR PRODUCTION NO. 74:**

All Rule 10b5-1 trading plans, pre-clearance requests and approvals, and insider-trading-policy compliance records for each Individual Defendant and Thomas Freeman from January 1, 2025 to the present, and Documents sufficient to show each sale of Alignment securities by each Individual Defendant during that period.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents Concerning any analysis or discussion of the effect that a reclassification of DTS costs from CapEx to OpEx, or any change in Adjusted EBITDA, would have on executive compensation, PSU vesting, AIP funding, earnings guidance, or Alignment's stock price.

**REQUEST FOR PRODUCTION NO. 76:**

The complete file of the OSHA Proceeding in Your possession, custody, or control, including all position statements, responses, declarations (including the declarations of Kao, Maroney, Scavo, and Wagner), exhibits, correspondence with OSHA, and Documents produced to or received from OSHA.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents Concerning the statement in the OSHA Proceeding that Kardes "had responsibility to monitor and review the capitalization of labor expenditures for the functional areas of the business under his supervision," and that he "clearly did have responsibility and input on DTS labor capitalization from 2021 through mid-2024," including every Document identifying those functional areas and the basis for these statements.

**REQUEST FOR PRODUCTION NO. 78:**

All Communications sent or received by Kao Concerning Kardes, Kardes's role(s) and proposed, offered, or promised changes thereto, the Protected Reports, the Capitalization Practices, the Adverse Actions, Kardes's performance, compensation, Equity Awards, or separation, any proposed or implemented reduction, transfer, restoration, or reinstatement of his responsibilities, Facets, the Investigation, the

OSHA Proceeding, or this Action from January 1, 2024 to the present, from every account and device used by Kao, including text, iMessage, and WhatsApp messages with Maroney, Scavo, Wagner, Freeman, Joyce, Konowiecki, any Board member, or any other Person.

**REQUEST FOR PRODUCTION NO. 79:**

All Communications sent or received by Maroney Concerning Kardes, his performance, roles, responsibilities, reporting relationships, compensation, Equity Awards, or separation, any proposed, offered, implemented, rescinded, restored, or reinstated role or responsibility, the Protected Reports, the Capitalization Practices, the Adverse Actions, the Investigation, the OSHA Proceeding, or this Action from January 1, 2024 to the present, from every account and device used by Maroney, including all related Communications with Kao or any other Person.

**REQUEST FOR PRODUCTION NO. 80:**

All Communications sent or received by Scavo Concerning Kardes, Kardes's performance, conduct, roles, responsibilities, or reporting relationships, any complaint, concern, or allegation about Kardes, the Protected Reports, the Capitalization Practices, Harvest time coding, DTS budgets, staffing, project delivery, or organizational changes, Facets, the proposed or implemented transfer, restoration, or reinstatement of Kardes's responsibilities, the Adverse Actions, the Investigation, the OSHA Proceeding, or this Action from January 1, 2024 through the date of Your response, from every account and device used by Scavo for such Communications, including Communications with Mike Lewis, Moez Slimi, Georgie Sam, Kao, Wagner, Freeman, Ropp, MacLeod, or any other Person, together with attachments and retained notes, recordings, or summaries of oral Communications Concerning these subjects.

**REQUEST FOR PRODUCTION NO. 81:**

All Communications sent or received by Wagner Concerning Kardes, the Protected Reports, including reports made through Kardes's counsel, the Adverse Actions, any complaint, concern, or allegation about Kardes and its investigation,

substantiation, or use in employment decisions, Kardes's performance, the promotions of Kardes's team, the April 8, 2025 organizational chart, any anticipated, proposed, implemented, rescinded, restored, or reinstated role, responsibility, or promotions for Kardes, any resignation discussion or threat attributed to Kardes, the Investigation, Kardes's compensation, FY2024 Bonus, 401(k) deductions or remittances, Equity Awards, or separation, the OSHA Proceeding, or this Action from January 1, 2024 to the present, from every account and device used by Wagner.

**REQUEST FOR PRODUCTION NO. 82:**

Documents sufficient to identify every Company and personal computer, mobile device, personal e-mail account, and messaging application used by each Individual Defendant or other relevant current or former custodian during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents Concerning any deletion, loss, replacement, or wiping of any device or account used by an Individual Defendant or other relevant current or former custodian covered by Request No. 82 during the Relevant Period, including any auto-delete or disappearing-message settings in effect.

**REQUEST FOR PRODUCTION NO. 84:**

Alignment's document-retention and destruction policies and schedules, e-mail and messaging retention settings, and mobile-device and bring-your-own-device policies in effect from January 1, 2024 to the present.

**REQUEST FOR PRODUCTION NO. 85:**

Documents sufficient to show the date(s) on which each litigation hold Concerning Kardes's claims was issued, recipients, the custodians and data sources to which each applied, and any release or modification of each hold or other preservation instruction Concerning the Protected Reports, the Investigation, Kardes's claims, the OSHA Proceeding, or this Action, including those issued following Kardes's reports through counsel. Include nonprivileged records reflecting implementation, custodian acknowledgments, suspension or resumption of automatic deletion, and identified

preservation failures. Kardes does not by this Request seek the privileged content of hold notices.

**REQUEST FOR PRODUCTION NO. 86:**

Documents sufficient to identify the systems, applications, and repositories in which responsive ESI is stored (including e-mail, Teams or other chat platforms, Harvest, HRIS/payroll, general-ledger and fixed-asset systems, board-portal systems, and shared drives), the retention period for each, and the custodians of each.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents Concerning any search of Kardes's e-mail account, devices, or files referenced in Defendants' Reply in support of their Motion for Sanctions (Dkt. 43) or relied upon to assert that Kardes did not report accounting concerns, identify capitalization irregularities, or prepare supporting calculations or analyses, whether asserted in the OSHA Proceeding, this Action, or public statements, including Documents sufficient to show who conducted each search, when, the search terms and parameters used, the sources searched, and the results of each search.

**REQUEST FOR PRODUCTION NO. 88:**

All existing original, draft, proposed, and final organizational charts, and all Documents and Communications Concerning proposed or implemented promotions, demotions, appointments, reassignments, changes in reporting relationships, or increases or decreases in authority, responsibilities, or scope, for Individual Defendants, Alignment's executive leadership, DTS, AVA, Data Science and AI, Member Experience, Stars, Medicare Risk Adjustment, Finance, Claims Appeals, and any Clinical Operations proposed for transition to Kardes, from January 1, 2023 through the date of Your response.

**REQUEST FOR PRODUCTION NO. 89:**

All insurance policies (including directors-and-officers, employment-practices-liability, and excess or umbrella policies) under which any insurer may be liable to satisfy all or part of a judgment in this Action or to indemnify or reimburse payments

made to satisfy such a judgment, together with all reservation-of-rights letters, coverage-position letters, and notices of claim Concerning Kardes's claims.

**REQUEST FOR PRODUCTION NO. 90:**

All indemnification agreements, advancement agreements, and bylaw or charter provisions under which any Individual Defendant is or may be indemnified or advanced fees in connection with this Action or the OSHA Proceeding, and Documents sufficient to show any payments made thereunder.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents identified, described, or relied upon in Your Rule 26(a)(1) initial disclosures, and all Documents You intend to rely upon in support of any defense, at any hearing, or at trial.

**REQUEST FOR PRODUCTION NO. 92:**

All Documents that You contend support any affirmative defense asserted or to be asserted in this Action, including any defense of failure to mitigate, after-acquired evidence, waiver, estoppel, unclean hands, statute of limitations, failure to exhaust, or that You would have taken the same action absent the Protected Reports.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents Concerning any contention by You that Kardes breached the Employment Agreement, any confidentiality obligation, or any Company policy, including by retaining or using Company Documents, and all Documents Concerning any investigation of such alleged conduct.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents obtained from any third party by subpoena, authorization, or informal request Concerning Kardes, including from prospective employers, recruiters, or financial institutions, and all Communications Concerning such requests.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents Concerning the adoption, amendment, suspension, or termination of any Rule 10b5-1 trading plan by any Individual Defendant from January

1, 2025 to the present, and all Documents Concerning the Form 144 notices filed on or about April 14, 2025.

**REQUEST FOR PRODUCTION NO. 96:**

All Communications between You and any Person (other than Your counsel) Concerning Kardes, this Action, the OSHA Proceeding, or Kardes's claims, including Communications with current or former employees, Board members, the Auditor, insurers, investors, or the press.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents Concerning Kardes that any Individual Defendant or Alignment provided to, or received from, any member of the press, including Business Insider, Becker's Healthcare, Modern Healthcare, Healthcare Dive, Becker's Payer Issues, Bloomberg Law, or any other outlet, from January 1, 2025 to the present.

**REQUEST FOR PRODUCTION NO. 98:**

To the extent not produced in response to the foregoing Requests, all Documents referenced, quoted, or described in the FAC that are in Your possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 99:**

To the extent not produced in response to the foregoing Requests, all Documents that You contend contradict or undermine any allegation of the FAC.

Dated: November 13, 2026

By: *<u>/s/ Jesse Sherrett</u>*

**STERLINGTON, PLLC**
Jesse Sherrett (*pro hac vice*)
Jonathan Sherman (*pro hac vice*)
530 Fifth Avenue, Suite 804
New York, New York 10036
Tel: (212) 433-2993
jesse.sherrett@sterlingtonlaw.com
jonathan.sherman@sterlingtonlaw.com

**ARMOND WILSON, LLP**
Brenton R. Babcock (Bar No. 162,120)
100 Bayview Circle, Suite 300
Newport Beach, CA 92660
Tel: (949) 386-1341
brent.babcock@armondwilson.com

*Counsel for Plaintiff*

**PROOF OF SERVICE**

On November 13, 2026, I caused to be served the foregoing document, Plaintiff Hakan Kardes's First Set of Requests for Production of Documents and Electronically Stored Information to be served upon the following counsel of record by depositing the same with the United States Postal Service, First-Class Mail, postage prepaid, in a sealed envelope addressed as follows:

Sheppard, Mullin, Richter & Hampton LLP
Attn: Joshua Hess
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 13, 2026

*/s/ Jesse Sherrett*
Jesse Sherrett